IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVIS ERICH SCHIESSER, #370969 <br> Plaintiff, <br> v. <br><br> WEXFORD HEALTH <br> C.M.S. <br> CORIZON[1] <br> Defendants. | * <br><br> * CIVIL ACTION NO. AW-12-cv-2795 <br><br> * <br><br> * <br><br> ***** |

# **MEMORANDUM**

I. Procedural History

On September 19, 2012, Davis Erich Schiesser ("Plaintiff"), a former Maryland Division of Correction inmate housed at the Eastern Correctional Institution ("ECI"),[2] filed this lawsuit against private health care services companies contracted with the State of Maryland to provide medical services to inmates.[3] (ECF No. 1). He contended that he has a seizure disorder, bipolar disorder with suicidal ideation, and [unintelligible][4] and he is not receiving any care or medication. Plaintiff claimed that he "could kill myself or have a seizure at any time and die." (*Id*. at p. 4). He seemingly alleged that he has been hearing voices over the past year and sought release from confinement, proper medical and psychological care, and compensation.

---

[1] The Clerk shall modify the docket to reflect the correct spelling of the name of Defendant Corizon.

[2] The Division of Correction Office of Data Processing confirms that Plaintiff was released on May 23, 2013.

[3] The Complaint against Defendants Maryland, D.O.C., E.C.I. and Potuxent was previously dismissed. (ECF No. 7).

[4] Plaintiff's handwriting is indecipherable. He may, however, be referencing a schizophrenia

II. Pending Motions

Pending before that Court are Wexford Health Sources Inc.'s ("Wexford") Motion to Dismiss or In the Alternative, Motion for Summary Judgment (ECF No. 14), C.M.S/Corizon's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 19), and Plaintiff's Opposition. (ECF No. 18). The undersigned has examined the record and finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2011). For reasons to follow, Defendants' Motions will be granted.

III. Standard of Review

Fed. R. Civ. P. 56(a) provides that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting

---

condition.

*Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

IV. Analysis

It is well settled law that a claimant may not recover against a municipality on a *respondeat superior* theory under 42 U.S.C. § 1983. *See Modell v. Dep't of Social Services,* 436 U.S. 658, 690-695 (1978). To the extent the Complaint names defendants Wexford and C.M.S./Corizon solely upon vicarious liability, Circuit law is clear. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). The Complaint may not be brought against C.M.S./Corizon or Wexford. The court's inquiry, however, does not end there.[5]

It is undisputed that Plaintiff is a 33 year old male with a reported history of mental health treatment dating to 1998 for anxiety, depression, and sleep disorder. When admitted to the state prison system in October 2011, he stated that he was being treated with Seroquel, Elavil and Vistaril, as well as Phenobarbital for a seizure condition. (ECF No. 14, Ex. 1 at pgs. 2-6; ECF No. 19, Ex. 2 at pgs. 2-7). Defendants affirm that Plaintiff was placed on the medication at the time of his admission to the Division of Correction and his Phenobarbital was renewed through June 26, 2012. (ECF No. 19, Ex. 2 at pgs. 50, & 64-66).

3

Defendant Wexford maintains that Plaintiff's current mental health diagnosis is a personality disorder not otherwise specified and that during his confinement, Plaintiff "exhibited manipulative goal oriented behavior directed to seeking specific desired medications and preferred medical/mental health care." (ECF No. 14, Ex. 1 at p. 44; Ex. 2 at Clem Aff.) Wexford claims that due to his mental health conditions, Plaintiff was admitted to Patuxent Institution on August 15, 2012, and remained housed at that facility for one month. (*Id*., Ex. 1 at pgs. 23-32 & 36). It is further alleged that Plaintiff was admitted to ECI's infirmary for acute mental health care and to ECI's Administration Segregation Observation Area ("ASOA") for 24-hour suicide observation after expressing suicidal ideation including the taking of his own life by hanging or overdose. (*Id*., Ex. 1 at p. 17; Ex.2 at Clem Aff.). According to the treating psychiatrist, Guillermo Portillo, Plaintiff has a self-avowed history of schizophrenia. Portillo noted that Plaintiff claimed he was suicidal because he was not given the "right" medications, he admitted that he abused amphetamines and marijuana earlier in his life, and gave contradictory information regarding his chemical dependency. (*Id*., Ex. 1 at p. 33-34).

Upon his transfer to ECI on October 20, 2011, Plaintiff arrived with a blister pack of Elavil, Seroquel, and Vistaril. (ECF No. 19, Ex. 2 at p. 16). The on-site psychiatrist ordered Risperdal to manage Plaintiff's schizophrenia and Elavil to manage his depression. (*Id*., at pgs. 17-19). Plaintiff, however, campaigned for the medications Seroquel and Vistaril.

Plaintiff's medical record shows that he was evaluated on July 9, 2012, for a possible urinary tract infection and headache. (ECF No. 14, Ex. 1 at pgs. 3-4). He was admitted to the infirmary for monitoring later that month. During his stay in the infirmary he was examined and an EKG was

---

[5] Defendants argue that they are not responsible for providing mental health care, including psychotropic medications, to inmates such as Plaintiff.

conducted. His physical condition was found to be stable and he was released to the ASOA after one day. On August 3, 2012, Plaintiff was seen for a subjective complaint of a broken ankle. The nurse found that he refused to cooperate with her and he demanded an x-ray. No swelling, redness or other obvious sign of injury was, however, noted. (ECF No. 14, Ex. 1 at pgs. 17-18).

On August 10, 2012, Plaintiff complained of pain in the back, neck, and behind his right eye. (*Id*., Ex. 1 at p. 19). He was evaluated and a decision was made to keep him on his prescribed Excedrin medication. (*Id*., Ex. 1 at p. 20).

On August 21, 2012, Dr. Portillo received Plaintiff's pre-incarceration medical care records. They documented that he was treated for migraines, anxiety, and lower back pain, but there was no reference to a seizure condition. Further, Portillo observed that while Plaintiff had been prescribed Phenobarbital by his primary care physician, the medication was discontinued prior to Plaintiff's confinement. (*Id*., Ex. 1 at pgs. 29-31).

On September 12, 2012, Plaintiff submitted a sick call slip seeking prescription renewal. The nurse who saw Plaintiff noted that his psychotropic medications Atarax and Perphenazine[6] had expired, but no new medications had been ordered. He was referred to a mental health provider for medication renewal. (*Id*., Ex. 1 at p. 42).

Over the course of the next few weeks, Plaintiff filed numerous sick-call slips seeking seizure medication and complaining of chest, back, and hand pain, along with right shoulder discomfort. He was twice referred to a physician's assistant ("P.A."), who found no abnormalities, noted that there was no documentation to confirm Plaintiff's claim of seizure activity, and there

---

[6] Atarax is used to treat anxiety, while Perphenazine is an antipsychotic medication. *See* www.drugs.com.

would be no change in Plaintiff's medications. Plaintiff was advised he would be continued on Tylenol for his headaches. (ECF No. 14, Ex. 1 at pgs. 42-59).

On October 9, 2012, Plaintiff was again seen by a P.A. for his sick-call complaints of seizures, migraines, and depression. No abnormalities were noted, but Plaintiff was prescribed an extra-strength pain reliever for his complaints. Two days later, he complained of seizures and bipolar disorder and requested medication. (*Id*., Ex. 1 at pgs. 61-70). He was advised that there was no objective documentation of seizures and his psychiatric medication was current. Over the following three weeks, Plaintiff complained of seizures, migraines, and an assault causing limitations in movement to his arm. He was seen by medical personnel in regard to each complaint. Plaintiff was given Tylenol, but reportedly spat them out indicating that the medication would not be helpful. (*Id*., Ex. 1 at pgs. 71-78). Again, as there was no objective evidence of seizure activity, no seizure medication was given. Plaintiff was informed that Excedrin Migraine medication was available to him as needed.

Plaintiff submitted sick-call slips on November 1 and November 2, 2012, complaining of migraines and requesting seizure medication. He further reported he was thinking of hanging himself or taking too many pills. Over the next three weeks he was assigned to the ASOA and seen by a social worker, nurses, and a P.A., who evaluated him and prescribed Excedrin Migraine and a low dose of Inderal for his headaches. His vital signs were found to be normal. (*Id*., Ex. 1 at pgs. 79-99).

In his Opposition, Plaintiff argues that deliberate indifference has occurred as he did not receive any treatment for his bipolar or manic depression disorders and the psychiatric department was aware that he requires treatment and that the lack of treatment causes "suffering." (ECF No.

18). He further contends that there is no dispute as to which medication works or which medication was to be used because absolutely no medication was offered, even after he made several requests. Plaintiff maintains that defendants are trying to camouflage their deliberate indifference with false accusations of drug abuse. (*Id.*).

An inmate has a constitutional right to be free from deliberate indifference to serious psychiatric needs. *See Estate of Miller, ex rel. Bertram v. Tobiasz,* 680 F.3d 984, 989-90 (7th Cir. 2012); *Comstock v. McCray*, 273 F.3d 693, 702 (6th Cir. 2001). For federal constitutional purposes, a serious medical need includes a serious psychiatric need. *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175, 1187 (9th Cir. 2002) ("The duty to provide medical care encompasses detainees' psychiatric needs."). To carry out the duty "not to engage in acts evidencing deliberate indifference to inmates' medical and psychiatric needs," a jail must provide "medical staff who are competent to deal with prisoner problems." *Id.* "[I]t is established that psychiatric needs can constitute serious medical needs and that the quality of psychiatric care one receives can be so substantial a deviation from accepted standards as to evidence deliberate indifference to those serious psychiatric needs." *Steele v. Shah,* 87 F.3d 1266,1269 (11th Cir. 1996). There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). An inmate is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id*. The *Bowring* court further concluded that the aforementioned right to such treatment is based upon

the essential test of medical necessity and not upon that care considered merely desirable. *Id*. at 48. As previously noted, even if the inmate shows that he was denied psychological or psychiatric treatment, he must also demonstrate that the failure or refusal to provide treatment constituted deliberate indifference on behalf of medical personnel.

Assuming that Plaintiff has shown a serious need for psychological and psychiatric treatment, the record is clear that Plaintiff received on-going mental health support at ECI from social workers, nurses, P.A.s, psychologists and psychiatrists. Plaintiff was seen by mental health and medical professionals on multiple occasions. Mental health personnel found him to exhibit manipulative behavior to obtain pain medication. Further, there is no dispute that Plaintiff did in fact receive seizure medication through September of 2012, even though he showed no objective evidence of seizures.[7] Although he was not provided the medication of his choice, Plaintiff was provided appropriate alternative medications given his objective conditions. While Plaintiff may disagree with Defendants over the form and appropriateness of his mental health treatment, he has failed to demonstrate that they acted with deliberate indifference to his serious mental health needs.

For the aforementioned reasons, Defendants' Motions shall be granted. A separate Order follows.

Date: August 8, 2013                                 /s/
                                     Alexander Williams Jr.
                                     United States District Court Judge

---

[7] It is noted that Plaintiff was frequently placed on ASOA, where he was monitored for 24-hour periods, and evinced no convulsive activity.